PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ZHAN GAO,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 07-2070

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: December 1, 2009

Decided: February 23, 2010

Before TRAXLER, Chief Judge, and WILKINSON and
MICHAEL, Circuit Judges.

Petition denied by published opinion. Judge Wilkinson wrote
the opinion, in which Chief Judge Traxler and Judge Michael
joined.

## COUNSEL

**ARGUED**: Amy Louise Howe, HOWE & RUSSELL, PC,
Bethesda, Maryland, for Petitioner. Zoe Jaye Heller, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Respondent. **ON BRIEF:** Tony West, Assistant Attorney

General, Douglas E. Ginsburg, Senior Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

## OPINION

WILKINSON, Circuit Judge:

Zhan Gao petitions for review of a final decision by the Board of Immigration Appeals ("BIA") denying her applications for withholding of removal and asylum. The BIA determined through adjudication that she was ineligible for these forms of relief because her conviction for unlawful export of military technology was a "particularly serious crime," even though it was not classified as an aggravated felony.

In her petition for review, Gao makes two principal arguments. For purposes of withholding of removal, she argues that only aggravated felonies can qualify as particularly serious crimes. For purposes of asylum, she contends that a non-aggravated felony can qualify as a particularly serious crime only if the Attorney General first designates it as such through regulation.

After careful consideration, we reject both arguments. We defer to the BIA's reasoned view that an offense need not be an aggravated felony to qualify as a particularly serious crime for purposes of withholding. Furthermore, we conclude that the BIA may determine that a non-aggravated felony is a particularly serious crime for purposes of asylum through the process of case-by-case adjudication. We likewise reject Gao's additional arguments and deny her petition.

I.

A.

Zhan Gao was born in the People's Republic of China. She entered the United States in 1989 on a student visa and

became a lawful permanent resident in 1993. Sometime thereafter, she began exporting controlled technology without a license to what the BIA described as "quasi-governmental entities in China" that focused on military research. Between October 2000 and January 2001, for example, she exported eighty microprocessors designed for use in military aircraft and missiles at a total sales price of $539,296. She and her husband did not, however, report any of this income in their 2001 federal tax return.

On January 20, 2001, Gao travelled to China with her husband and oldest child on a family visit. Shortly before she was scheduled to return to the United States, she was detained by Chinese authorities and separated from her husband and child. The authorities held her in solitary confinement, interrogated her for long hours, and accused her of taking "internal" documents out of China. On July 24, 2001, she was convicted of spying on behalf of Taiwan and sentenced to ten years in prison. Due at least in part to criticism from the United States, China released Gao on "medical parole" on July 26, 2001, and she returned to the United States.

After returning, Gao gained attention by speaking and publishing articles about her treatment in China. But around the same time, she resumed her business of exporting technology to China. She did so without obtaining or even inquiring about the proper licenses. Between November 2001 and January 2002, she made seven shipments, one of which was unlawful.

Unbeknownst to her at that time, the federal government had been investigating her exporting activities since the fall of 2000. The investigation culminated on February 25, 2002 when government agents executed a search warrant at her residence and discovered several items which are illegal to export without a license.

Following the search, Gao began cooperating with the government in an effort to obtain a lighter sentence. On Novem-

ber 26, 2003, she pled guilty to one count of unlawful export of Commerce Control List items in violation of 50 U.S.C. § 1702 and § 1705(b) and to one count of tax fraud in violation of 26 U.S.C. § 7206(1). Based on her cooperation, the district court granted her a downward departure and sentenced her to seven months of imprisonment, eight months of community confinement, and three years of supervised release. It also ordered her to pay an assessment of $200, a fine of $2,500, forfeiture of $505,521, and taxes, interest, and penalties of $88,885.

## B.

Following Gao's release from prison, the Department of Homeland Security ("DHS") detained her and initiated removal proceedings. It charged that Gao was inadmissible and thus removable on two independent grounds: (1) her convictions for unlawful export and tax fraud were "crime[s] involving moral turpitude" under 8 U.S.C. § 1182(a)(2)(A)(i)(I) and (2) the Attorney General had reasonable grounds to believe that she sought "to enter the United States to engage solely, principally, or incidentally in" an activity "to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information" under 8 U.S.C. § 1182(a)(3)(A)(i)(II).

The immigration judge ruled that Gao's convictions for tax fraud and unlawful export were crimes involving moral turpitude, rendering her removable under Section 1182(a)(2)(A)(i)(I). But he found that she was not removable under Section 1182(a)(3)(A)(i)(II) because a "reasonable person" would not expect her to engage in future unlawful activity.

Turning to the question of relief, the immigration judge found that Gao was entitled to asylum, withholding of removal, and deferral of removal under the Convention Against Torture (CAT). He rejected DHS's contention that

she was ineligible for asylum and withholding because her conviction for unlawful export was a "particularly serious crime" under 8 U.S.C. § 1158(b)(2)(A)(ii) and § 1231(b)(3)(B)(ii). While acknowledging that Gao's crime created a risk of future harm, he concluded that it was not particularly serious because it did not involve "a direct link to violent crime" or "directly affect the health of individuals in the United States."

DHS appealed, arguing among other things that Gao was removable under Section 1182(a)(3)(A)(i)(II) and that her conviction was a particularly serious crime. The BIA found no error on the first point, but it reversed on the second. While acknowledging that Gao's crime of unlawful export was not an aggravated felony, the BIA reasoned that its "national security implications" rendered it a particularly serious crime. It was "impossible," the BIA explained, "to quantify the number of lives [Gao] potentially imperiled by exporting military technology that is still presumably extant." Accordingly, it held that Gao was ineligible for asylum and withholding of removal. It did, however, uphold the immigration judge's conclusion that she was eligible for protection under the CAT.

Both parties filed motions to reconsider, and the BIA issued a second decision. This time, it reversed the immigration judge's ruling that Gao was not removable under Section 1182(a)(3)(A)(i)(II), finding he applied the wrong standard of proof. But the BIA reaffirmed its previous conclusion that Gao's offense was a particularly serious crime, even though it was not an aggravated felony.

Gao filed a pro se petition for review of the BIA's decision, and this court subsequently appointed counsel to represent her. In this appeal, we note that Gao's removability under Section 1182(a)(2)(A)(i)(I) for crimes involving moral turpitude and her eligibility for protection under the CAT are not before us. Instead, Gao challenges the BIA's decisions that she is ineligible for withholding of removal and asylum and

that she is removable under Section 1182(a)(3)(A)(i)(II) as an alien who seeks to enter the United States to violate its export laws.

## II.

We first turn to Gao's eligibility for withholding of removal and asylum. Because the statutes governing these forms of relief differ somewhat, we address them separately.

## A.

We begin by setting out the relevant statutory provisions governing withholding of removal. Under the Immigration and Nationality Act ("INA"), an alien facing deportation is ineligible for withholding of removal if "the Attorney General decides," among other things, that "the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). For purposes of this provision:

> an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

§ 1231(b)(3)(B). The INA defines "aggravated felony" at 8 U.S.C. § 1101(a)(43). The parties agree that Gao's unlawful export offense falls outside that definition.

Gao urges us to read this paragraph to imply that *only* aggravated felonies can qualify as particularly serious crimes. She notes that the first sentence creates a per se rule that

aggravated felonies accompanied by prison terms of at least five years are particularly serious. She then contends that the second sentence modifies the one before it by granting the Attorney General discretion to find that other aggravated felonies are particularly serious on a case-by-case basis. But because the second sentence does not mention non-aggravated felonies, she argues that the Attorney General is implicitly precluded from considering those offenses as particularly serious crimes.

We have jurisdiction to review this question of law under 8 U.S.C. § 1252(a)(2)(D), but we do not approach it with a blank slate. The BIA has held that "a particularly serious crime need not be an aggravated felony" for purposes of withholding of removal. *In re N-A-M-*, 24 I. & N. Dec. 336, 337 (BIA 2007). In its view, the statute "creates no presumption that the Attorney General may not exercise discretion on a case-by-case basis to decide that . . . nonaggravated-felony crimes are also 'particularly serious.'" *Id.* at 338 (quoting *Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006)). The second sentence, it explained, "means only that aggravated felonies for which sentences of less than 5 years' imprisonment were imposed may be found to be 'particularly serious crimes,' not that *only* aggravated felonies may be found to be such crimes." *Id.* at 341.

When it interprets ambiguous provisions of the INA, the BIA is entitled to deference under the familiar principles of principles of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Moreover, we note that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *Id.* at 425 (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)).

Applying the principles of *Chevron* here, we conclude that Congress has not "directly spoken to the precise question at

issue." *Chevron*, 467 U.S. at 842. The term "particularly serious crime" is open-ended, and the statute does not define it. And prior to the BIA's decision in *N-A-M-*, the courts of appeal were divided over whether only aggravated felonies could be particularly serious crimes for purposes of withholding of removal. *Compare Alaka v. Attorney Gen. of the United States*, 456 F.3d 88, 105 (3d Cir. 2006) (holding that particularly serious crimes must be aggravated felonies), *with Ali*, 468 F.3d at 470 (rejecting that view). Accordingly, we defer to the BIA's interpretation so long as it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

For the reasons below, we conclude that the BIA's interpretation was plainly permissible. In doing so, we join the other circuits that have had occasion to consider the BIA's *N-A-M-* decision. *See N-A-M v. Holder*, 587 F.3d 1052, 1055-56 (10th Cir. 2009); *Delgado v. Holder*, 563 F.3d 863, 867-69 (9th Cir. 2009); *Nethagani v. Mukasey*, 532 F.3d 150, 156-57 (2d Cir. 2008).

The reasons for this consensus are straightforward. The statute does not declare that some categories of crimes may not be considered particularly serious. Instead, it creates a per se rule that some aggravated felonies must be considered particularly serious and then leaves it up to the Attorney General to "decide[ ]" whether other crimes are as well. 8 U.S.C. § 1231(b)(3)(B). Petitioner would read the second sentence of the quoted paragraph to impose a major limitation on the Attorney General's discretion by implication. But the language of that provision is not restrictive, but permissive. In our view, the BIA quite naturally reads that sentence not as implicitly limiting the Attorney General's discretion to aggravated felonies but instead as reinforcing the scope of that discretion. That is, the second sentence clarifies that the previous sentence simply creates a *per se* category of particularly serious crimes, rather than the *exclusive* category. As the Second Circuit explained, the BIA "naturally and reasonably reads the second sentence of § 1231(b)(3)(B) as a caution against draw-

ing an available inference from the prior sentence." *Netha-gani*, 532 F.3d at 157

The BIA has also noted two other factors that support its interpretation. First, the "history and background" of the particularly serious crime provision suggest that it is not limited to the universe of aggravated felonies. *N-A-M-*, 24 I. & N. Dec. at 339. Since Congress first enacted the provision in 1980, the BIA's "consistent practice" has "reflected an understanding" that particularly serious crimes need not be aggravated felonies. *Id.* at 338-39. And despite the fact that Congress has amended the statute several times, it has never limited the concept of particularly serious crimes to aggravated felonies. *Id.* at 339-41 (tracing the history of the provision).

Second, the BIA noted that its reading was consistent with the purpose of the statute, which is to protect the public from dangerous individuals. *Id.* at 341. As it observed, some crimes, such as possessing biological weapons or tampering with consumer products, are potentially quite serious yet do not meet the technical requirements of being aggravated felonies. *Id.* at 341 & n. 6. Limiting particularly serious crimes to aggravated felonies would therefore "create[ ] a gap or loophole" whereby individuals committing very serious crimes would remain eligible for withholding of removal, unless some other statutory exception happened to apply to them. *Id.* at 341.

For these reasons, we shall respect the BIA's interpretation. Accordingly, we hold that the Attorney General and, by extension, the BIA had the authority to determine whether Gao's conviction was a particularly serious crime under Section 1231(b)(3)(B)(ii) even though it was not an aggravated felony.[1]

---

[1] Gao also faults the BIA for not making separate findings on the seriousness of her crime and her dangerousness to the community. But it is

B.

We now turn to Gao's eligibility for asylum. Much like in the context of withholding of removal, an alien is ineligible for asylum "if the Attorney General determines that," among other things, "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii). The statute then provides two "Special rules" for applying the particularly serious crime provision in the context of asylum. § 1158(b)(2)(B). First, "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime," regardless of the length of sentence imposed. § 1158(b)(2)(B)(i). Second, "[t]he Attorney General may designate by regulation offenses that will be considered" particularly serious crimes. § 1158(b)(2)(B)(ii).

Gao does not dispute that non-aggravated felonies can qualify as particularly serious crimes for purposes of asylum and for good reason. Given that the statute makes all aggravated felonies per se particularly serious, the Attorney General's power to designate offenses as such by regulation would be "wholly redundant" if it were limited to aggravated felonies. *Delgado v. Holder*, 563 F.3d 863, 870 (9th Cir. 2009).

Instead, Gao contends that regulation is the exclusive means by which the Attorney General can determine that a non-aggravated felony is a particularly serious crime. The BIA, she argues, is thus precluded from making these determinations through case-by-case adjudication. We have jurisdiction over this legal question under 8 U.S.C.

well settled in this circuit that "once the particularly serious crime determination is made, the alien is ineligible for withholding without a separate finding on dangerousness." *Kofa v. INS*, 60 F.3d 1084, 1088 (4th Cir. 1995) (en banc).

§ 1252(a)(2)(D), and we reject Gao's claim for the reasons below.[2]

First of all, nothing in the statute says that the Attorney General must use regulation to designate crimes as particularly serious. Instead, the statute empowers the Attorney General to "determine[ ]" whether an alien has been convicted of a particularly serious crime, 8 U.S.C. § 1158(b)(2)(A), and then provides that he "*may* designate by regulation offenses that will be considered" as such. § 1158(b)(2)(B)(ii) (emphasis added). Like our sister circuits, we think that Section 1158(b)(2)(B)(ii) simply empowers the Attorney General to designate offenses which, like aggravated felonies, will be considered per se particularly serious. *Delgado*, 563 F.3d at 870; *Ali v. Achim*, 468 F.3d 462, 468-69 (7th Cir. 2006). Its nature is again permissive, and it does not preclude him and, by extension, the BIA from determining whether an individual alien's crime was particularly serious by looking at the underlying facts in the course of adjudication.

Second, it is a basic principle of administrative law that "the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 203 (1947); *see also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). This principle exists for good reason. Rulemaking, by its very nature, is categorical, whereas adjudication is sensitive to the facts of particular cases. While rulemaking has certain advantages, requiring an agency to proceed by rulemaking alone could "stultify the administrative process" by rendering it "in-

---

[2] The Attorney General argues that Gao failed to exhaust her administrative remedies as required by 8 U.S.C. § 1252(d)(1) with respect to her asylum claim, but on balance we agree with Gao that her filings before the BIA repeatedly challenged the BIA's statutory authority to determine that her conviction was a "particularly serious crime" for purposes of asylum and withholding of removal.

flexible and incapable of dealing with many of the specialized problems which arise." *Chenery II*, 332 U.S. at 202.

Here, for example, it is not difficult to discern why the BIA has chosen the flexibility that adjudication affords. The underlying circumstances of an alien's crime may make that crime particularly serious, "even though the same offense committed by other persons in other circumstances would not necessarily be particularly serious." *Delgado*, 563 F.3d at 870. Recognizing this, the BIA examines crimes on a case-by-case basis to identify dangerous individuals and protect the public from them. Absent statutory language to the contrary, we are reluctant to push the BIA to a categorical approach that would be insensitive to individual circumstances.

Third, the Attorney General would also face immense practical difficulties if he were required to act through rulemaking alone. It would be a Herculean task to "sift through each state's code and prospectively identify by regulation every single crime that would qualify as 'particularly serious.'" *Ali*, 468 F.3d at 469. Courts should not casually impose such burdens on administrative agencies, especially where, as here, there is no indication that Congress intended to do so.

For these reasons, we conclude that the BIA was permitted under Section 1158(b)(2) to determine that Gao's offense was particularly serious through adjudication.

C.

Next Gao argues that, even if we reject her legal challenges, we should nonetheless find that the BIA abused its discretion in determining that her crime was particularly serious. The INA provides that we may not review determinations of the Attorney General "the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . , other than granting of [asylum]." 8 U.S.C. § 1252(a)(2)(B)(ii). While there is some question as to how

explicit the statutory language conferring discretion on the Attorney General must be to invoke this provision, *compare*, *e.g.*, *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008), *with Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006), the resolution of that issue is not necessary in the case before us because the BIA plainly acted with the bounds of its discretion.

The BIA determines whether crimes are particularly serious on a case-by-case basis, considering factors such as "the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982). Appellate courts should not lightly reverse for abuse of discretion in cases where, as here, lower tribunals weigh various factors under a totality-of-the circumstances test. The weighing of such factors is the very essence of a discretionary judgment.

Considering such factors, the BIA determined that Gao's conviction for unlawfully exporting military technology was particularly serious. The BIA acknowledged that Gao's sentence had been relatively light, but it discounted this factor because her sentence was "based largely on the fact that [she] had cooperated with law enforcement officials," rather than on the nature of her offense. It also acknowledged that unlawful export is not a particularly serious crime on its face, but it concluded that the "national security implications" of Gao's conduct elevated it to that status. By selling "sophisticated microprocessors with well-known military applications" to "quasi-governmental entities in China" that were known to do military research, Gao "placed her desire for financial gain ahead of the security interests of the United States." It was "impossible," the BIA explained, "to quantify the number of lives [Gao] potentially imperiled by exporting military technology that is still presumably extant."

In her petition, Gao criticizes the BIA's decision on a number of grounds, but her main contention appears to be that her crime cannot be considered particularly serious because there is no evidence that it actually harmed anyone. The BIA soundly rejected this argument, however, reasoning that it was "the very potential of risk that [made] [Gao's] offense so serious." There is no question that this did not represent an abuse of discretion.

### III.

Lastly, Gao challenges the BIA's finding that she was inadmissible and thus removable under 8 U.S.C. § 1182(a)(3)(A)(i)(II), as one whom the Attorney General "knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in" any activity "to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information." We need not reach this issue either because it too is not relevant to the outcome of this case.

The immigration judge found and Gao concedes that she was removable for another, independent reason: her convictions for unlawful export and tax fraud were crimes "involving moral turpitude" under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Thus, Gao is removable regardless of whether Section 1182(a)(3)(A)(i)(II) also applies to her.

Gao points out that if we deemed her eligible for asylum and withholding of removal, a finding of inadmissibility under Section 1182(a)(3)(A)(i)(II) would have certain collateral effects on her ability to seek additional relief in the future. But having affirmed the BIA's conclusion that she is not eligible for asylum and withholding, we see no reason to express an opinion on the applicability of Section 1182(a)(3)(A)(i)(II).

## IV.

For the reasons above, Gao's petition is

*DENIED*.