McKEE, Circuit Judge, dissenting
Today we hold that the panel in Alaka v. Attorney General[1] erred in concluding that "particularly serious crime," as that term is used in 8 U.S.C. § 1231(b)(3)(B), is not limited to aggravated felonies. Although I concede that the question is a close call, I agree with Judge Ambro that the category is limited to aggravated felonies. Accordingly, I join Judge Ambro's dissent from the Majority's analysis of that issue. For the reasons he explains in his dissent, I agree that Congress intended to limit particularly serious crimes in 8 U.S.C. § 1231(b)(3)(B) to aggravated felonies. However, like Judge Ambro, I also commend Judge Shwartz for her analytical approach in explaining the Majority's conclusion that Alaka was wrongly decided. I share the concern expressed in the Majority Opinion regarding the "IJ and BIA's blatant disregard of the binding regional precedent" of this Article III Court.[2] The Majority's approach of avoiding a discussion of In re M-H- ,[3] and Chevron deference,[4] is in the best tradition of Article III jurisprudence.
Nevertheless, I cannot agree that the Majority has appropriately dealt with the unambiguous phrase "by regulation" in 8 U.S.C. § 1158(b)(2)(B) ; therefore, I must also respectfully dissent from the Majority's interpretation of that provision. As I *269 explain below, my colleagues' analysis and discussion of that phrase simply reads it out of the statute. Although I appreciate the difficulties that can result from interpreting the statute as Congress wrote it, I am not convinced by the Majority Opinion that those difficulties justify simply ignoring the express limitation that Congress placed upon the Attorney General's authority to define crimes as being "particularly serious."
I.
Congress unambiguously stated that "[t]he Attorney General may designate by regulation offenses that will be considered to be a [particularly serious] crime."[5] My colleagues argue that the fact that the statute says the Attorney General "may " designate offenses as particularly serious crimes by regulation does not mean the Attorney General may only do so by regulation. They believe that Congress did not intend to preclude the Attorney General from also so designating offenses by agency adjudication.[6] They proclaim: "the grant of regulatory authority to designate classes of offenses as particularly serious crimes did not displace the Attorney General's authority to also make case-specific determinations concerning whether an alien's offense should be deemed 'particularly serious.' "[7] However, that proclamation ignores that Congress did expressly limit that grant of regulatory authority. It stated that the Attorney General could designate additional crimes "by regulation."
My colleagues suggest that Congress would have stated that "the Attorney General shall designate by regulation," if Congress intended to require the Attorney General to act by regulation only. However, inserting a command such as "shall" instead of "may" would almost certainly obligate the Attorney General to designate additional particularly serious crimes, whether or not the Attorney General would otherwise have done so. Surely Congress did not intend to require the Attorney General to designate additional crimes as being "particularly serious" within the meaning of the statute. Rather, Congress left that decision to the discretion of the Attorney General. Had Congress intended to allow the Attorney General to designate other crimes as particularly serious in any way that s/he chose, rather than relying on "may" in drafting § 1158(b)(2)(B), Congress would have said something like: "[t]he Attorney General may designate by regulation, or otherwise , offenses that will be considered to be a crime described in clause (ii) ... of subparagraph (A)." Or, Congress could have omitted the limiting phrase completely and just said: "[t]he Attorney General may designate offenses that will be considered to be a crime described in clause (ii) ... of subparagraph (A)." It chose not to do that, so the limiting phrase that was inserted must mean something.
My colleagues gloss over the fact that they are reading "by regulation" out of the statute by explaining "[t]his authorization ... is permissive and does not preclude the Attorney General from evaluating, on a case-by-case basis, whether the facts and circumstances of a conviction also support concluding that an individual alien committed a particularly serious crime."[8] But simply saying the authority that Congress granted is "permissive" surely cannot negate *270 the express limitation Congress placed on that permission or the resulting limitation on how the Attorney General may exercise that authority. The statute is permissive, but the permission is not absolute.
A simple and practical hypothetical is illustrative here. Assume that a child living in Newark, New Jersey asks her mother for permission to travel to New York City for the weekend, and the mother responds, "you may go to New York for the weekend." Now, imagine the mother's horror when the daughter calls from Los Angeles and tells the mother that she had permission to travel there because the mother simply said the daughter may go to New York, but did not say that the daughter may not go to Los Angeles or that she must go to New York. The daughter's claim of parental permission would be no less valid than the grant of congressional permission which my colleagues rely upon here. Yet, I think it is safe to assume that the daughter's explanation would be met with something less than enthusiastic approval. It is an argument that no parent would accept, and this Court should not accept it either.
The analogy is not as far afield as the very different context may suggest. Such "permission by omission" (or more precisely, license by omission) is exactly what the Majority is authorizing.
My colleagues explain that "[i]mmigration officials have proceeded via case-by-case adjudication since the early 1980s."[9] They argue that "[w]e presume that Congress was aware of this procedure in 1996 when it granted the Attorney General the authority to identify by regulation categories of crimes that may be deemed per se particularly serious crimes."[10] But therein lies the proverbial rub. Congress did not have to include the limitation "by regulation" when the statute was amended in 1996. It is much more logical to conclude that Congress included that limitation because it was concerned about what immigration officials had been doing "since the early 1980s," and wanted to limit the Attorney General's exercise of discretion. Why else include the limitation - "by regulation?" The fact that Congress was aware of what immigration officials had been doing for 16 years before adding "by regulation" to the statute is perhaps the strongest argument against the Majority's position.
The Majority Opinion attempts to rescue the jettisoning of this limiting phrase in part by citing to Rossman v. Fleet Bank (R.I.) National Association ,[11] and arguing that we there relied upon the " 'permissive sense' of the word 'may.' "[12] However, Rossman is totally irrelevant to our inquiry here. There, a borrower sued Fleet Bank arguing that a fee imposed that was not disclosed in the credit card solicitation violated the Truth in Lending Act. The bank claimed that the credit solicitation only had to accurately disclose fees which were contemplated when it issued the solicitation agreement. The Act required disclosure of "[a]ny annual fee ... imposed for the issuance or availability of a credit card."[13] A controlling regulation required disclosure of "[a]ny ... periodic fee ... that may be imposed for the issuance ...
*271 of a credit or charge card."[14] The borrower claimed that this meant that Fleet had to disclose any fee that may ever be imposed for the credit card. However, applicable provisions of the Truth in Lending Act allowed the bank to make subsequent changes to fees as long as they did not "affect the accuracy of a previous disclosure."[15] We agreed with the District Court's conclusion that "in this context " the "use of the word 'may' does not compel adoption of plaintiff's interpretation."[16] Context matters; and the context in which "may" was used in the statute and regulation at issue in Rossman is wholly unhelpful to our inquiry into what that word means in the context of 8 U.S.C. § 1158(b)(2)(B)(ii).
My colleagues' allusion to a second problem with my interpretation of the asylum statute is not helpful either. They cite Lorillard v. Pons[17] to argue that we presume Congress was aware that the Attorney General had been defining new crimes as serious crimes on a case-by-case basis and that Congress therefore accepted the practice by subsequently re-enacting the statute "without change."[18] However, as I explain in more detail below, Congress did not reenact the statute "without change," it amended it by adding the limitation "by regulation," thereby limiting the authority of the Attorney General.
In order to justify reading "by regulation" out of the statute, the Majority Opinion also partially relies upon a discussion of some of the regulatory history and agency and judicial decisions that preceded the 1996 amendments.[19] That analysis may have some relevance to an inquiry into the meaning of an ambiguous statute. However, there is nothing ambiguous about the phrase "by regulation" or any other part of the statute that we are discussing, and my colleagues do not suggest that there is any ambiguity. Accordingly, much of the discussion in footnote five of the Majority Opinion should simply be irrelevant to our inquiry here. It is the cardinal canon of statutory interpretation that a court must begin with the statutory language. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."[20]
The Majority's analysis is also contrary to our obligation to give effect to each word of a statute "so that no part will be inoperative or superfluous, void or insignificant."[21] Ironically, the Majority Opinion stresses that its reading "give[s] effect to every word of the statute."[22] But simply saying so does not make it so. It completely ignores the limiting phrase: "by regulation."
*272 I realize, of course, that the Supreme Court has long held that courts must presume Congress intended "a sensible construction" of statutes and that any interpretation that produces an absurd result suggests that Congress did not intend that which the text of a statute would otherwise require.[23] However, neither the Majority here, nor the decisions of our sister courts of appeals that are relied upon, make any serious attempt to show that limiting the Attorney General to the regulatory process would create such an absurdity and therefore counsel against a literal interpretation of "by regulation." Merely saying that such a limitation "would impose an onerous burden,"[24] does not mean that it would create an absurdity. Many restrictions on government action may be viewed by some as onerous or burdensome. That is particularly true of restrictions on governmental exercise of power. Indeed, the entire regimen established under the Immigration and Nationality Act and related treaties impose burdens on the Executive's exercise of authority. But burdensome limitations do not automatically rise to the level of an absurdity for purposes of statutory construction.
Nevertheless, my colleagues do insist that limiting the Attorney General to the regulatory process "would impose an onerous burden."[25] However, the "burdens" imposed by requiring the Attorney General to engage in rulemaking to supplement the list of crimes that are particularly serious are not so onerous or impossible as to make the resulting scheme absurd. To the extent that requiring the Attorney General to invoke the regulatory process before allowing the Attorney General to exclude an entire category of persons from eligibility for a favorable exercise of discretion imposes an undue burden, it is a burden that Congress, and not the courts, must mitigate.
II.
My colleagues also rely on decisions of our sister appellate courts for their conclusion that "by regulation" includes case-by-case adjudication, but those decisions are devoid of the kind of analysis that should be required before ignoring an unambiguous statutory limitation on the authority of the Attorney General. Most of the cases relied upon by the Majority contain precious little (if any) analysis of the limiting phrase "by regulation" in § 1158(b)(2)(B). They merely recite the statutory text, don jurisprudential blinders, and blithely conclude that the statute doesn't say what it says. For example, in Ali v. Achim , relied on by the Majority, the Court of Appeals for the Seventh Circuit actually stated: "[n]owhere does [the statute] purport to prohibit the Attorney General from determining in a given case that an alien's nonaggravated felony is 'particularly serious' unless he had the foresight to explicitly itemize that particular crime by regulation. The statutory language simply is not susceptible to such a limited interpretation."[26] But of course, the statute is not only susceptible to that interpretation; it says exactly that in unmistakable language. By its very terms it does "purport to prohibit the *273 Attorney General from determining in a given case that an alien's nonaggravated felony is 'particularly serious' unless" the determination is done "by regulation." The court's declaration to the contrary is nothing more than ipse dixit , and my colleagues' citation to it is also an ipse dixit ; it could not more clearly conflict with the statutory text.
Similarly, in Delgado , the Court of Appeals for the Ninth Circuit relied on Ali 's analysis to conclude that, even though the statute "is silent on case-by-case adjudication," it "does not require the Attorney General to anticipate every adjudication by promulgating a regulation covering each particular crime."[27] But the statute is not silent on case-by-case adjudication. Moreover, the Delgado court was affording Chevron deference to the BIA.
Two issues relevant to our discussion were before the court in Delgado . First, whether the withholding statute limited particularly serious crimes to aggravated felonies; and second, whether, under the asylum statute, the Attorney General was limited to the regulatory process in order to declare other crimes particularly serious. On the first question, because there was no controlling judicial precedent to guide its analysis, the court relied upon Chevron and deferred to the BIA's interpretation of the statute. The court's analysis can be summed up in its statement: "[u]nder Chevron, we owe deference to the BIA's interpretation."[28]
The court then decided that "by regulation" also included case-by-case adjudication, in part by deferring to the BIA. It stated: "[b]ecause the history of the withholding and asylum statutes are similar, our conclusion as to the withholding statute is instructive."[29] The court then cited the BIA's history of case-by-case adjudication and concluded that "the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication."[30] Since the court failed to provide any in-depth analysis of why it could ignore the clear limitation in the statute, it does not provide much guidance for our inquiry into the meaning of this unambiguous statute.
The other case that the Majority relies upon for the proposition that "by regulation" includes case-by-case adjudication is Gao v. Holder .[31] Gao suffers from similar flaws. There, the Court of Appeals for the Fourth Circuit cited to the decision in Ali . It, too, read the explicit limitation, "by regulation," out of the statute, concluding that "nothing in the statute says that the Attorney General must use regulation to designate crimes as particularly serious."[32] Thus, as in Ali and Delgado , the court put on blinders and concluded that the statute does not say what it says. And, as in Delgado , the court then proceeded to defer to the BIA's decision to determine particularly serious crimes on a case-by-case basis.[33] It concluded "the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."[34] However, that is clearly not true where, as here, Congress *274 has imposed limits on the exercise of that informed discretion. These decisions simply do not provide sufficient support for us to ignore the text of this unambiguous statute.
Moreover, as my colleagues note, and as I have noted above, Congress specifically amended the asylum statute to add the limiting phrase: "by regulation."[35] I have already mentioned this, but I think it is worth reiterating that the limitation was not included in the asylum statute before 1996.[36] The statute simply barred asylum where the alien committed any aggravated felony. The Attorney General did not have any authority to deny asylum based on the commission of any other category of crime.[37] If we are to give each word in the statute meaning,[38] we must conclude that Congress specifically added "by regulation" to give the Attorney General a power which he did not already possess. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."[39] Congress clearly thought that the Attorney General needed authority to designate other offenses as particularly serious crimes "by regulation." If my colleagues are correct and adding "by regulation" does not limit the Attorney General to the regulatory process, then that phrase in the 1996 amendment is absolutely meaningless. However, that conclusion violates our obligation to give meaning to every word of a statute. If a congressional grant of authority was necessary to allow the Attorney General to designate offenses as particularly serious "by regulation," then the Attorney General should need a congressional grant of authority to designate offenses as particularly serious by BIA adjudication.
III.
Accordingly, for all the reasons I have set forth above, I must respectfully dissent.

This is different from the asylum statute, which creates only two tiers: aggravated felonies, all of which are particularly serious, and all other crimes, which may "by regulation" be designated as particularly serious. 8 U.S.C. § 1158(b)(2)(B)(ii).

Maj. Op. at 259-60 n.1.

26 I. & N. Dec. 46 (BIA 2012).

Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See also Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs. , 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (explaining when an Article III court owes deference to the administrative agency's interpretation of a statute).

8 U.S.C. § 1158(b)(2)(B)(ii) (emphasis added).

Maj. Op. at 262-63.

Id . at 262-63.

Id . at 262-63 (emphasis added).

Id . (citing Delgado v. Holder , 648 F.3d 1095, 1106 (9th Cir. 2011) (en banc)).

Id .

280 F.3d 384, 393 (3d Cir. 2002).

Maj. Op. at 263-64 n.4.

Rossman , 280 F.3d at 392 (quoting 15 U.S.C. § 1637 (c)(1)(A)(ii)(I) ).

Id . (quoting 12 C.F.R. § 226.5a(b)(2) ) (emphasis in original).

Id .

Id . at 393 (emphasis added).

434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

Maj. Op. at 262-63.

Id. at 262-64.

Conn. Nat'l Bank v. Germain , 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (internal citations and quotations omitted).

Corley v. United States , 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (quoting Hibbs v. Winn , 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) ).

Maj. Op. at 261-62 (citing Leocal v. Ashcroft , 543 U.S. 1, 12, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) ) (internal quotation marks omitted).

United States v. Kirby , 74 U.S. (7 Wall.) 482, 486-87, 19 L.Ed. 278 (1868). See also Encompass Ins. Co. v. Stone Mansion Rest. Inc ., 902 F.3d 147, 152 (3d Cir. 2018), reh'g denied (Sept. 17, 2018) ("Nevertheless, it is also a 'basic tenet of statutory construction ... that courts should interpret a law to avoid absurd or bizarre results.' ") (quoting In re Kaiser Aluminum Corp ., 456 F.3d 328, 338 (3d Cir. 2006) ).

Maj. Op. at 264 (quoting Ali v. Achim , 468 F.3d 462, 469 (7th Cir. 2006) ).

Id .

468 F.3d at 469.

648 F.3d at 1106.

Id. at 1102.

Id. at 1106.

Id. (citing Ali , 468 F.3d at 469 ).

595 F.3d 549 (4th Cir. 2010).

Id. at 556.

Id. at 556-57.

Id. at 556 (citing SEC v. Chenery Corp. , 332 U.S. 194, 203, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947) ).

See Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, div. C., tit. VI, § 604(a), 110 Stat. 3009.

See, e.g. , 8 U.S.C. § 1158 (1996) ; 8 U.S.C. § 1158 (1994).

See 8 U.S.C. § 1158(d) (1996).

Leocal , 543 U.S. at 12, 125 S.Ct. 377 ("[W]e must give effect to every word of a statute wherever possible.").

Stone v. I.N.S. , 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995).