Opinion by Judge FISHER; Partial Concurrence and Partial Dissent by Judge REINHARDT.
OPINION
FISHER, Circuit Judge:
Hernán Ismael Delgado petitions for review of a decision of the Board of Immigration Appeals (BIA) ordering him removed to his native El Salvador. The BIA affirmed the immigration judge’s (IJ) ruling that Delgado was ineligible for asylum, withholding of removal and withholding under the Convention Against Torture (CAT) because he had been “convicted of a particularly serious crime” — driving under the influence (DUI). 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). The BIA also ruled that Delgado was ineligible for deferral of removal under CAT because he failed to prove a likelihood of future torture. We grant the petition in part, deny it in part and remand to the BIA.[1] We hold as follows:
First, we hold that we have jurisdiction to review the BIA’s determination that an alien has been convicted of a “particularly serious crime” and is therefore ineligible for withholding of removal. We held otherwise in Matsuk v. INS, 247 F.3d 999 (9th Cir.2001), relying on 8 U.S.C. § 1252(a)(2)(B)(ii), which strips us of jurisdiction to review “any ... decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security.”[2] We now overrule Matsuk in light of the Supreme Court’s decision that § 1252(a)(2)(B)(ii) bars judicial review “only when Congress itself set out the Attorney General’s discretionary authority in the statute.” Kucana v. Holder, — U.S. -, 130 S.Ct. 827, 837, 175 L.Ed.2d 694 (2010).
Second, we hold that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime. The BIA has so held in a precedential decision, In re N-A-M-(N-A-M- I), 24 I. & N. Dec. 336, 337 (B.I.A.2007). That decision is entitled to deference under Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, that driving under the influence is not statutorily defined as an aggravated felony *1098 does not preclude the BIA from determining that DUI can be a particularly serious crime.
Third, we hold that, for asylum purposes, the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication as well as regulation. The BIA — as the Attorney General’s delegate — was thus permitted in this case to determine whether Delgado’s DUI offenses were particularly serious for purposes of asylum eligibility.[3]
The remaining question is whether the BIA properly concluded that Delgado was convicted of a particularly serious crime and thus barred from eligibility for withholding of removal and asylum. The BIA’s explanation for its decision is so ambiguous that we cannot conduct meaningful judicial review. We therefore remand to the BIA for a clear explanation. See Su Hwa She v. Holder, 629 F.3d 958, 963-64 (9th Cir.2010); Eneh v. Holder, 601 F.3d 943, 947 (9th Cir.2010).
I. Background
Delgado, a native and citizen of El Salvador, entered the United States on a non-immigrant visitor visa in 1980. He fled El Salvador at age 10 after his mother and father were tortured and murdered for their political opinions. Delgado overstayed his visa and has remained in the United States since his entry in 1980. During his time in the United States, he has been convicted of DUI three times.
Delgado’s first DUI conviction was in 1992. That conviction arose from an accident occurring when the vehicle he was driving collided with another vehicle. Both Delgado and his passenger suffered broken legs; it is not clear whether anyone in the other vehicle was injured. He received a one-year jail sentence.
His second DUI conviction occurred in 2000. Delgado was stopped for driving 85 miles an hour and weaving on a highway. He failed a field sobriety test, pled guilty to DUI and received a 16-month prison sentence. Upon his release on parole in July 2001, the Immigration and Naturalization Service (INS) took him into custody and initiated removal proceedings against him.[4] The INS charged that Delgado was removable for overstaying his 1980 visa and because his latest DUI was an aggravated felony.[5] An immigration judge released Delgado on bond.
Delgado’s third DUI conviction followed. In December 2001, while Delgado was still on parole and had a suspended license, he was stopped for unsafe driving after being observed 'weaving between lanes on an interstate highway. His blood alcohol level was 0.12. He was convicted of DUI and sentenced to two years’ imprisonment.
At his subsequent immigration hearing, Delgado, proceeding pro se, conceded removability but sought asylum, withholding of removal, CAT withholding and CAT deferral, claiming that he would be persecuted if returned to El Salvador.[6]
*1099 The IJ denied Delgado’s applications for ■withholding of removal, asylum and CAT withholding. In each case, the IJ concluded that Delgado was ineligible for relief because he had been convicted of a particularly serious crime. The IJ “conduet[ed] an individualized hearing to determine whether [Delgado’s] convictions individually or cumulatively constitute^] particularly serious crimes,” and determined that each of Delgado’s three DUI convictions was a particularly serious crime that barred him from eligibility for asylum under § 1158(b)(2)(A)(ii), withholding of removal under § 1231(b)(3)(B)(ii) and CAT withholding under 8 C.F.R. § 1208.16(d)(2). In the alternative, the IJ concluded that Delgado’s DUI offenses were “particularly serious crimes” when considered cumulatively.
The IJ also denied Delgado’s request for CAT deferral under 8 C.F.R. § 1208.17.[7] The IJ accepted that Delgado’s parents were killed in 1980 on account of their political activities, but found that, as a result of improved country conditions, Delgado did not show that it was more likely than not that he would be tortured were he returned to El Salvador.
The BIA affirmed in an unpublished, per curiam decision signed by one member of the Board. The decision stated that Delgado “presented no arguments on appeal that would cause us to reverse the Immigration Judge’s decision.” On the particularly serious crime question, the Board said only: “Based on the record before us, we agree with the Immigration Judge that the respondent is subject to removal from the United States based on ... his record of convictions which rise to the level of being a particularly] serious crime.... ”
II. Discussion
Delgado raises three principal arguments in his petition for review. First, he contends that the BIA lacked the authority to treat his DUI offenses as particularly serious crimes for purposes of withholding of removal because only statutorily defined aggravated felonies can be treated as particularly serious crimes under § 1231. Second, he contends that the BIA lacked the authority to treat his DUI offenses as particularly serious crimes for purposes of asylum because only aggravated felonies and offenses designated by the Attorney General by regulation — as opposed to case-by-case adjudication — can constitute particularly serious crimes under § 1158. Finally, Delgado argues that, even if the BIA had authority to treat his DUI offenses as particularly serious crimes for purposes of withholding of removal, asylum or both, the BIA erroneously concluded that his DUI offenses were in fact particularly serious. We address Delgado’s arguments in turn. Before doing so, however, we consider our jurisdiction.
A. Jurisdiction
There is no question that we have jurisdiction over this case to the extent it involves questions of statutory interpretation. See 8 U.S.C. § 1252(a)(2)(D); Ramadan v. Gonzales, 479 F.3d 646, 648 (9th Cir.2007) (per curiam). Nevertheless, we previously held that we lacked jurisdiction to review the determination that a crime was particularly serious for purposes of withholding of removal. See Matsuk v. *1100 INS, 247 F.3d 999, 1002 (9th Cir.2001). We decided that we lacked jurisdiction over the question because § 1231 directs the Attorney General to “decide” whether there was a conviction for a particularly serious crime and § 1252(a)(2)(B)(ii) provides that “no court shall have jurisdiction to review ... any ... decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [§§ 1151-1381] to be in the discretion of the Attorney General or the Secretary of Homeland Security.”[8] We concluded that the Attorney General’s decision was discretionary within the meaning of § 1252(a)(2)(B)(ii). Under Matsuk, we would be precluded from reaching Delgado’s contention that the BIA improperly treated his DUI convictions as particularly serious crimes for purposes of his application for withholding of removal, but Matsuk is no longer good law.[9]
The government concedes Matsuk must be overruled in light of the Supreme Court’s recent decision in Kucana v. Holder, — U.S. -, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010). Kucana explains that § 1252(a)(2)(B)(ii) “bar[s] court review of discretionary decisions only when Congress itself set out the Attorney General’s discretionary authority in the statute.” Id. at 837. Under Kucana, a provision is not “specified ... to be in the discretion of the Attorney General” unless the statute explicitly refers to the discretion of the Attorney General. See id. at 836-37. The statute at issue here, § 1231(b)(3)(B)(ii), states that withholding of removal “does not apply ... if the Attorney General decides that ... the alien, having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States.” This provision does not explicitly vest discretion in the Attorney General. Accordingly, as the government concedes, we have jurisdiction to review such determinations.[10] Because Matsuk held otherwise, we overrule it.
B. Statutory Framework
We begin with a brief overview of the statutory framework. Congress established the statutory right of aliens to request asylum and withholding of removal to bring the United States refugee law into conformity with the 1967 United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6577 (the Protocol), to which the United States acceded in 1968. See Barapind v. Reno, 225 F.3d 1100, 1106 (9th Cir.2000). The Protocol incorporates the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees (the Convention), July 5, 1951, 189 U.N.T.S. 150. See id. (citing the Protocol, 19 U.S.T. at 6259, which reprints the Convention). Article 33 of the Convention, entitled “Prohibition of Expulsion or Return (‘Refoulement’),” provides that:
1. No Contracting State shall expel or return (“refouler”) a refugee in any manner whatsoever to the frontiers of territories where his life or freedom *1101 would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.
2. The benefit of the present provision may not, however, be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.
19 U.S.T. at 6276.
Our immigration laws reflect these principles by providing for two different forms of relief from removal — withholding of removal and asylum. See In re S-M-J-, 21 I. & N. Dec. 722, 723 (B.I.A.1997) (en banc) (“Congress incorporated the international obligation into domestic United States law when it enacted the withholding of deportation provision of the Refugee Act of 1980, prohibiting the refoulement of refugees. Going beyond the nonrefoulement provision, Congress also established asylum as a discretionary form of relief for those who could meet a lesser standard of proof.” (citation omitted)), disapproved of on other grounds by Ladha v. INS, 215 F.3d 889 (9th Cir.2000); see also INS v. Cardoza-Fonseca, 480 U.S. 421, 427-29, 436, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

1. Withholding of Removal

To qualify for withholding of removal, an applicant must show that his “life or freedom would be threatened” if he is returned to his homeland. See 8 U.S.C. § 1231(b)(3)(A) (“[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien’s life or freedom would be threatened in that country because of the alien’s race, religion, nationality, membership in a particular social group, or political opinion.”). The alien must demonstrate “that it is more likely than not that he would be subject to persecution on one of the specified grounds.” Al-Harbi v. INS, 242 F.3d 882, 888 (9th Cir.2001) (internal quotation marks omitted). Withholding of removal is not discretionary: “[t]he Attorney General is not permitted to deport an alien to a country where his life or freedom would be threatened on account of one of the [ ] protected grounds.” Id. (internal quotation marks omitted).
Withholding, however, “does not apply to an alien ... if the Attorney General decides that ... the alien, having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States.” 8 U.S.C. § 1231(b)(3)(B)(ii). The statute does not define “particularly serious crime,” but does provide that certain aggravated felony convictions automatically fall within this category:
For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.
Id. § 1231(b)(3)(B). As used in immigration law, “aggravated felony” is a term of art referring to the offenses enumerated under § 1101(a)(43).

2. Asylum

The Attorney General has discretion to grant asylum to any applicant who qualifies as a “refugee.” Id. § 1158(b)(1). A refugee is “any person ... who is unable or unwilling to return to” his country of origin “because of persecution or a well-founded fear of persecution on account of *1102 race, religion, nationality, membership in a particular social group, or political opinion.” Id. § 1101(a)(42).
As in the case of withholding of removal, asylum relief does “not apply to an alien if the Attorney General determines that ... the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.” Id. § 1158(b)(2)(A)(ii). As with withholding, the statute does not define “particularly serious crime.” But the statute provides that all aggravated felonies are particularly serious crimes and authorizes the Attorney General to designate additional crimes as particularly serious crimes by regulation:
(i) Conviction of aggravated felony
For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.
(ii) Offenses
The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (in) of subparagraph (A).
Id. § 1158(b)(2)(B).
Having provided this brief overview of the statutory frame-work, we turn to Delgado’s specific arguments.
C. For Purposes of Withholding of Removal, Particularly Serious Crimes Are Not Limited to Statutorily Defined Aggravated Felonies[11]
Delgado argues that the BIA was barred from treating his DUI convictions as particularly serious crimes for purposes of withholding of removal. Drawing inferences from § 1231(b)(3)(B), he contends that only aggravated felonies, statutorily defined by § 1101(a)(43), may be treated as particularly serious crimes. We reject this argument because it is contrary to the BIA’s reasonable interpretation of § 1231 that “a particularly serious crime need not be an aggravated felony.” N-A-M- I, 24 I. & N. Dec. at 337. Under Chevron, we owe deference to the BIA’s interpretation.
The BIA’s precedential decisions interpreting the Immigration and Nationality Act are entitled to Chevron deference. See Marmolejo-Campos v. Holder, 558 F.3d 903, 909 (9th Cir.2009) (en banc). Under Chevron,
we determine whether “the intent of Congress is clear.” If it is, both the court and the agency “must give effect to the unambiguously expressed intent of Congress.” If the statute is “silent or ambiguous,” however, we may not supply the interpretation of the statute we think best ..., but must limit ourselves to asking “whether the agency’s answer is based on a permissible construction of the statute.”
Id. at 908 (internal citations omitted) (quoting Chevron U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). We therefore address whether § 1231 is ambiguous and, if so, whether the BIA’s resolution of that ambiguity is reasonable.

1. Section 1231(b)(3)(B) Is Ambiguous

We have little trouble concluding that § 1231 is ambiguous. As noted, the last paragraph in § 1231(b)(3)(B) provides:
For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sen- *1103 fence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.
8 U.S.C. § 1231(b)(3)(B). This provision, and the second sentence in particular, could be understood to mean that only aggravated felonies can be particularly serious crimes. See Alaka v. Attorney Gen., 456 F.3d 88, 105 (3d Cir.2006) (holding that “an offense must be an aggravated felony in order to be classified as a ‘particularly serious crime’ ” because the second sentence is “clearly tied to the first”). But an alternative construction is at least as reasonable — the second sentence may mean that any crime potentially can be particularly serious regardless of the sentence imposed. See N-A-M- I, 24 I. & N. Dec. at 338 (adopting the reasoning of Ali v. Achim, 468 F.3d 462, 470 (7th Cir.2006), which held that § 1231(b)(3)(B) “does not imply that only aggravated felonies can qualify as ‘particularly serious’ crimes”). Other circuits have found the statute ambiguous, see Gao v. Holder, 595 F.3d 549, 554 (4th Cir.2010); N-A-M v. Holder (N-A-M- II), 587 F.3d 1052, 1056 (10th Cir. 2009); Nethagani v. Mukasey, 532 F.3d 150, 156-57 (2d Cir.2008), and we agree. We must therefore decide whether the BIA’s interpretation is based on a permissible construction of the statute.

2. The BIA’s Interpretation Is Permissible

The BIA agreed with the Seventh Circuit that the “designation of aggravated felonies producing sentences of at least five years’ imprisonment as per se ‘particularly serious’ creates no presumption that the Attorney General may not exercise discretion on a case-by-case basis to decide that other nonaggravated-felony crimes are also ‘particularly serious.’ ” N-A-M- I, 24 I. & N. Dec. at 338 (quoting Ali, 468 F.3d at 470) (internal quotation marks omitted). The BIA rejected the Third Circuit’s conclusion that the second sentence in the last paragraph in § 1231(b)(3)(B) implies that particularly serious crimes are limited to the universe of aggravated felonies. See id. at 341. According to the BIA, “[t]hat sentence means only that aggravated felonies for which sentences of less than 5 years’ imprisonment were imposed may be found to be ‘particularly serious crimes,’ not that only aggravated felonies may be found to be such crimes.” Id. The BIA noted that its “consistent practice in numerous decisions over the course of the years has reflected an understanding that the classification of an offense as a ‘particularly serious crime’ is not limited to offenses that are aggravated felonies.” Id. at 338-39. The BIA also emphasized that its interpretation is “supported by the history and background of the particularly serious crime provision.” Id. at 339.
We agree with those courts to have considered the question that the BIA’s construction of the statute is a permissible one under Chevron. See Gao, 595 F.3d at 554-55; N-A-M- II, 587 F.3d at 1055-56; Nethagani, 532 F.3d at 156-57.[12] The *1104 BIA’s interpretation of the statutory language is reasonable. The statute includes no express requirement that the Attorney General consider particularly serious crimes as a subset of aggravated felonies. Furthermore, as the BIA emphasized, its interpretation is supported by the statutory history of the particularly serious crime bar.
Congress first adopted a “particularly serious crime” bar to withholding of removal in 1980. See Refugee Act of 1980, Pub.L. No. 96-212, § 203(e), 94 Stat. 102, 107 (formerly codified at § 1253(h)(2)(B)). Under this provision, the BIA applied the case-by-case balancing test of In re Frentescu, 18 I. & N. Dec. 244 (B.I.A.1982), to define particularly serious crimes. Frentescu’s test did not take into account whether the crime at issue had been statutorily defined as an aggravated felony. But over time, the BIA denominated some crimes as inherently particularly serious, so that individual determinations with regard to those crimes were not necessary. See, e.g., In re Garcia-Garrocho, 19 I. & N. Dec. 423, 425-26 (B.I.A.1986) (defining first-degree burglary as per se particularly serious).
Congress then amended three times the “particularly serious crime” bar applicable to withholding of removal. Congress created and modified a category of per se particularly serious crimes, in part ratifying the BIA’s newer approach of specifying per se particularly serious crimes. See Miguel-Miguel v. Gonzales, 500 F.3d 941, 945-46 (9th Cir.2007). The Immigration Act of 1990 (the 1990 Act) made all crimes defined as aggravated felonies also particularly serious crimes. See Pub.L. No. 101-649, § 515(a)(2), 104 Stat. 4978, 5053 (1990) (formerly codified at § 1253(h)(2)(B)). Nothing in the text or history of the 1990 Act suggests that Congress intended, by making aggravated felonies per se particularly serious crimes, to divest the Attorney General of authority to determine on a case-by-case basis that other crimes are particularly serious. See N-A-M- II, 587 F.3d at 1056. Notwithstanding the 1990 Act, the agency continued to adjudicate particularly serious crimes on a case-by-case basis. See In re B-, 20 I. & N. Dec. 427, 430-31 (B.I.A.1991).
Congress relaxed the 1990 Act’s categorical approach in 1996 by passing § 413(f) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, § 413(f), 110 Stat. 1214, 1269 (formerly codified at § 1253(h)(3)(B)). AED-PA amended the “particularly serious crime” bar to allow the Attorney General to override the per se rule for aggravated felonies when “necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees.” Id. Congress again relaxed the categorical bar when it passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, div. C, § 305(a)(3), 110 Stat. 3009-546, 3009-602 (codified at § 1231(b)(3)(B)). IIRIRA enacted the provision at issue here, which categorically bars aggravated felons sentenced to five years or more imprisonment. See 8 U.S.C. § 1231(b)(3)(B).
The sparse legislative history of IIRIRA suggests one purpose of this enactment was to prevent violations of the Protocol. As noted earlier, the Protocol includes a non-refoulement provision prohibiting the expulsion or return of certain aliens. See 19 U.S.T. at 6276. As the list of aggravated felonies expanded during the 1990s, the per se rule for particularly serious crimes created tension with the Protocol by *1105 sweeping in some “fairly minor offenses.” In re Q-T— M-T-, 21 I. & N. Dec. 639, 648 & n. 4 (B.I.A.1996) (quoting Immigration Control and Financial Responsibility Act of 1996: Mark-up on S. 1664 before the S. Comm, on the Judiciary, 104th Cong., 2d sess. 60-61 (1996) (remarks of Sen. Kennedy)) (internal quotation marks omitted); see also Choeum v. INS, 129 F.3d 29, 42-44 (1st Cir.1997) (accepting the INS’s argument that the 1996 IIRIRA amendments were motivated by expansion of the list of aggravated felonies). But nothing in the legislative history indicates that Congress intended, by creating a categorical bar and by later relaxing that categorical bar, to eliminate the Attorney General’s pre-existing authority to determine that, under the circumstances presented by an individual case, a crime was “particularly serious,” whether or not the crime was an aggravated felony.[13]
We therefore hold that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime. The BIA thus had authority to determine whether Delgado’s DUI convictions were particularly serious crimes, barring him from withholding of removal under § 1231(b)(3)(B).[14]
D. For Purposes of Asylum, Particularly Serious Crimes Are Not Limited to Offenses Designated by the Attorney General by Regulation
Delgado next argues that the BIA lacked authority to designate his DUI convictions as particularly serious crimes for purpose of his asylum application. He contends that, for purposes of asylum, particularly serious crimes include only aggravated felonies and such additional offenses as are designated particularly serious crimes by the Attorney General through regulation. DUI is not an aggravated felony and has not been designated by regulation as a particularly serious crime. Delgado thus disputes the BIA’s authority to determine through adjudication that his DUI convictions were particularly serious crimes. We reject his contention and hold that the Attorney General — or the BIA, the Attorney General’s delegate- — can designate a specific offense as a particularly serious crime through case-by-case adjudication.
As we have said, asylum relief does “not apply to an alien if the Attorney General determines that ... the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.” 8 U.S.C. § 1158(b)(2)(A)(ü). The statute does not define “particularly serious crime,” but provides that aggravated felonies are particularly serious crimes and authorizes the Attorney General to designate additional crimes as particularly serious crimes by regulation:
(i) Conviction of aggravated felony
For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.
(ii) Offenses
The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).
*1106 Id. § 1158(b)(2)(B). There is little question that this latter provision permits the Attorney General, by regulation, to make particular crimes categorically particularly serious even though they are not aggravated felonies. See Gao, 595 F.3d at 556. The question here is whether the Attorney General may also determine by adjudication that an individual immigrant’s crime was particularly serious.[15]
Because the history of the withholding and asylum statutes are similar, our conclusion as to the withholding statute is instructive. Although Congress has amended the asylum statute’s particularly serious crime bar over time, none of its actions have called into question the BIA’s authority to designate offenses as particularly serious crimes through case-by-case adjudication. The BIA historically made the determination whether an alien’s crime was particularly serious for purposes of asylum strictly by adjudication, applying the Frentescu standard. See In re Frentescu, 18 I. & N. Dec. at 247. Congress made aggravated felonies categorically particularly serious crimes in 1990. See 1990 Act, Pub.L. No. 101-649, § 515(a)(1), 104 Stat. at 5053 (formerly codified at § 1158(d)). In 1996, Congress added § 1158(b)(2)(B)(ii), which authorizes the Attorney General to “designate by regulation offenses that will be considered to be [particularly serious crimes]” for purposes of asylum. IIRIRA, Pub.L. No. 104-208, div. C, § 604(a), 110 Stat. at 3009-692.
Section 1158(b)(2)(B)(ii) authorizes the categorical designation of additional crimes as particularly serious through regulation, and is silent on case-by-case adjudication. See Gao, 595 F.3d at 556-57. Indeed, it would be difficult to designate by regulation crimes that will be “considered” to be particularly serious unless the designation is categorical for those crimes. The provision simply does not speak to the ability of the Attorney General to determine in an individual case that the circumstances of an alien’s crime made that crime particularly serious. The statute does not require the Attorney General to anticipate every adjudication by promulgating a regulation covering each particular crime.
We therefore hold, consistent with other circuits to have addressed the question, that the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication of individual asylum applications. See id. at 557; Ali, 468 F.3d at 469.[16] The BIA thus was permitted to determine *1107 whether Delgado’s DUI offenses were particularly serious through adjudication.
E. The BIA’s Determination that Delgado Was Convicted of a Particularly Serious Crime
Having settled questions of jurisdiction and the scope of the BIA’s authority, the remaining question is whether the BIA properly determined that Delgado was convicted of a particularly serious crime, and thus barred from eligibility for asylum, see 8 U.S.C. § 1158(b)(2)(A)(ii), and withholding of removal, see id. § 1231 (fo) (3) (B) (ii).
The BIA articulated “[t]he applicable legal standard for determining whether the alien has committed a particularly serious crime” in Frentescu, 18 I. & N. Dec. at 247. Anaya-Ortiz v. Holder, 594 F.3d 673, 679 (9th Cir.2010). Frentescu requires consideration of certain factors: “the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.” In re Frentescu, 18 I. & N. Dec. at 247. In short, a crime is particularly serious if the nature of the conviction, the underlying facts and circumstances and the sentence imposed justify the presumption that the convicted immigrant is a danger to the community. See In re Carballe, 19 I. & N. Dec. at 360 (“It must be determined that an applicant for relief constitutes a danger to the community of the United States to come within the purview of the particularly serious crime bar.”); see also N-A-M-1, 24 I. & N. Dec. at 342 (describing the BIA’s method of applying the Frentescu factors).[17]
The BIA’s decisionmaking is governed by minimum procedural requirements. As relevant here, the BIA must provide “a reasoned explanation for its actions.” Movsisian v. Ashcroft, 395 F.3d 1095, 1098 (9th Cir.2005). “Due process and this court’s precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument.” Su Hwa She v. Holder, 629 F.3d 958, 963 (9th Cir.2010). The BIA must be clear enough that we need not “speculate based on an incomplete analysis.” Id. at 964; see also Eneh v. Holder, 601 F.3d 943, 947 (9th Cir.2010).
In Delgado’s case, the BIA explained only that:
Based on the record before us, we agree with the Immigration Judge that the respondent is subject to removal from the United States based on ... his record of convictions which rise to the level of being a particularly] serious crime (Exh. 2).
We cannot tell from this scant analysis which of Delgado’s crimes the BIA consid *1108 ered particularly serious or what led the Board to find his crime particularly serious. The BIA may have determined that one or more of Delgado’s three DUI convictions individually rises to the level of a particularly serious crime. Alternatively, the BIA may have determined that Delgado’s three convictions, when viewed cumulatively, rise to the level of a particularly serious crime. Or the BIA may have determined that one of the convictions — presumably the third — rises to the level of a particularly serious crime in light of Delgado’s two earlier convictions. Moreover, the ambiguity that precludes us from understanding the BIA’s reasoning also prevents us from discerning the extent to which the BIA agreed with and is supported by the IJ’s analysis, assuming the BIA intended to adopt the IJ’s reasoning.[18] Without knowing the basis of the Board’s decision, we cannot conduct a meaningful review. We therefore remand to the BIA for a clear explanation. See Su Hwa She, 629 F.3d at 963-64; Eneh, 601 F.3d at 947.
F. Delgado’s CAT Deferral Claim
We have jurisdiction pursuant to § 1252(a) to review the BIA’s denial of Delgado’s claim for CAT deferral. See Morales v. Gonzales, 478 F.3d 972, 976 (9th Cir.2007). We review for substantial evidence. See Zheng v. Ashcroft, 332 F.3d 1186, 1193 (9th Cir.2003). To obtain relief, Delgado was required to prove that “more likely than not, [ ]he will be tortured at the instigation of, or with the acquiescence of the [Salvadoran] government.” Silaya v. Mukasey, 524 F.3d 1066, 1073 (9th Cir. 2008); see also 8 C.F.R. § 1208.17(a).
The agency’s conclusion that Delgado failed to meet his burden is supported by substantial evidence. The evidence does not compel the conclusion that Delgado will be tortured by the Salvadoran government. See Sinha v. Holder, 564 F.3d 1015, 1026 (9th Cir.2009) (defining “torture,” citing 8 C.F.R. § 1208.18(a)(1)). The record reflects that conditions in El Salvador have improved, and the political violence that led to the murder of Delgado’s parents has ended. Although we believe Delgado when he says that it will be like torture for him to return to the country where his parents were murdered, that is not a harm inflicted “at the instigation of or with the consent or acquiescence of’ the current Salvadoran government. 8 C.F.R. § 1208.18(a)(1). CAT relief is therefore unavailable.
PETITION GRANTED IN PART AND DENIED IN PART AND CASE REMANDED. Each party shall bear its own costs.

. A three-judge panel, Judge Canby writing for the majority, initially dismissed in part and denied in part Delgado's petition, but later amended the opinion to grant a partial remand. See Delgado v. Mukasey (Delgado I), 546 F.3d 1017 (9th Cir.2008), withdrawn and superseded by Delgado v. Holder (Delgado II), 563 F.3d 863 (9th Cir.2009). Judge Berzon concurred in part and dissented in part in both opinions. We granted rehearing en banc, see Delgado v. Holder, 621 F.3d 957 (9th Cir.2010) (order), and stayed the case pending the Supreme Court's decision in Kucana v. Holder, - U.S. -, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010).

. Hereinafter, all statutory references are to 8 U.S.C. unless otherwise indicated.

. "As adjudicator in immigration cases, the Board exercises authority delegated by the Attorney General.” Kucana, 130 S.Ct. at 832.

. On March 1, 2003, the detention and removal duties of the INS were transferred to the newly formed Bureau of Immigration and Customs Enforcement, a subdivision of the Department of Homeland Security. See Resendiz v. Kovensky, 416 F.3d 952, 954 n. 1 (9th Cir.2005) (citing the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135).

. The INS later dropped the aggravated felony charge.

. Delgado also sought cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act and suspension of deportation, but he has not sought review of the denial of those forms of relief.

. Deferral of removal and withholding of removal are different forms of CAT protection. Both prohibit returning an alien to a specific country where he or she would likely face torture. An alien who is ineligible for CAT withholding may nonetheless be eligible for deferral of removal. See 8 C.F.R. § 1208.16(c)(4); see also Abufayad v. Holder, 632 F.3d 623, 631 (9th Cir.2011); Lemus-Galvan v. Mukasey, 518 F.3d 1081, 1083 (9th Cir.2008).

. In a later case, we held that the jurisdiction-stripping provision did not apply to the determination that a crime was particularly serious for purposes of asylum. See Morales v. Gonzales, 478 F.3d 972, 979-80 (9th Cir.2007).

. The three-judge panel questioned Matsuk but felt constrained to follow it. See Delgado II, 563 F.3d at 871 n. 12 (recognizing the dissent’s "persuasive” criticism of Matsuk); id. at 874-75, 888-89 (Berzon, J., concurring in part and dissenting in part) (criticizing Matsuk and suggesting rehearing en banc to overrule it).

.This conclusion is in accord with the decisions of other circuits. See Nethagani v. Mukasey, 532 F.3d 150, 154-55 (2d Cir.2008); Alaka v. Attorney Gen., 456 F.3d 88, 97-98, 101-02 (3d Cir.2006).

. Parts II.C and II.D of this opinion borrow substantially from Judge Canby's opinion. See Delgado II, 563 F.3d 863.

. Delgado and amici argue that we need not defer to the BIA because it relied on a "plain text” reading of § 1231, a statute we have just found ambiguous. But the BIA did not rely on plain text alone: As we explained above, the BIA acknowledged the ambiguity and exercised its discretion to interpret the statute. Chevron requires us to defer to the BIA so long as N-A-M- I is "a permissible construction of the statute.” Marmolejo-Campos, 558 F.3d at 908 (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778) (internal quotation marks omitted). Even if the BIA had relied solely on the text of § 1231, we would not be able to adopt Delgado's preferred interpretation. “[I]f an agency erroneously contends that Congress' intent has been clearly expressed and has rested on that ground, we remand to require the agency to consider the question *1104 afresh in light of the ambiguity we see.” Negusie v. Holder, 555 U.S. 511, 129 S.Ct. 1159, 1167, 173 L.Ed.2d 20 (2009) (quoting Cajun Elec. Power Coop., Inc. v. FERC, 924 F.2d 1132, 1136 (D.C.Cir.1991)) (internal quotation marks omitted).

. Just as the 1996 amendments appear to recognize that some aggravated felonies are not particularly serious crimes, so too does it appear that some particularly serious crimes are not statutorily defined as aggravated felonies. Possession of a biological weapon, for example, is a very serious offense, but is not enumerated as an aggravated felony under § 1101(a)(43). See Gao, 595 F.3d at 555.

. If Delgado is ineligible for withholding of removal because he has been convicted of a particularly serious crime under § 1231(b)(3)(B), he is also ineligible for CAT withholding. See 8 C.F.R. § 1208.16(d)(2).

. Unlike in the withholding context, where we deferred to N-A-M- I, in the asylum context there is no precedential BIA decision addressing whether the Attorney General can designate particularly serious crimes by adjudication. The BIA’s decision in the present case was itself not precedential, so we would owe it only Skidmore deference. See Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). But the BIA did not explicitly interpret its authority under the asylum statute so there is no reasoning to which we could defer. See Vasquez v. Holder, 602 F.3d 1003, 1012 n. 8 (9th Cir.2010) (holding that Skidmore requires only "minimal deference” to a thinly reasoned decision); Miranda Alvarado v. Gonzales, 449 F.3d 915, 924 n. 6 (9th Cir.2006) (holding that Skidmore deference did not apply to a "brief and conelusory decision”). Under Skidmore, "the measure of deference afforded to the agency varies ’depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.’ ” Marmolejo-Campos, 558 F.3d at 909 (quoting Skidmore, 323 U.S. at 140, 65 S.Ct. 161). Our review of this question is therefore effectively de novo.

. It is true that our reading makes § 1158(b)(2)(B)(ii) a "belt and suspenders” approach to denying asylum, but that outcome is inevitable. Under our reading, the statute confirms that the Attorney General can deny relief on a case-by-case basis because of criminal history or through an exer *1107 cise of discretion under § 1158(b)(1)(A), which provides that "the Attorney General may grant asylum" (emphasis added). But were the statute read to mean that the Attorney General could rely on regulation alone to designate classes of aliens as ineligible, that too would be redundant because § 1103(g)(2) already directs the Attorney General to “establish such regulations ... as the Attorney General determines to be necessary for carrying out this section.”

. We have upheld the BIA’s interpretation of this statute to require only the factual finding of conviction of a particularly serious crime to support the determination of danger to the community. See Ramirez-Ramos v. INS, 814 F.2d 1394, 1397 (9th Cir.1987). The United Nations High Commissioner for Refugees (UNHRC) argued in an amicus brief submitted before rehearing en banc that the BIA’s precedent violates the 1967 Protocol Relating to the Status of Refugees and the 1951 Convention Relating to the Status of Refugees. Delgado did not adopt the UNHRC’s argument or brief his own argument for overturning Ramirez-Ramos. We therefore do not address that issue.

. We cannot ascertain which of the IJ’s rationales the BIA intended to adopt, if any. Thus, the ambiguity in the BIA’s decision cannot be resolved by consulting the IJ’s decision. As a threshold matter, we may look to an IJ's decision only if the BIA reviewed the IJ’s decision for an abuse of discretion, see de Leon-Barrios v. INS, 116 F.3d 391, 393 (9th Cir.1997), the BIA incorporated portions of the IJ’s decision into its analysis, see Molina-Estrada v. INS, 293 F.3d 1089, 1093 (9th Cir.2002), or the circumstances indicate that the IJ’s decision serves as "a guide to what lay behind the BIA’s conclusion,” Avetova-Elisseva v. INS, 213 F.3d 1192, 1197 (9th Cir.2000). None of those preconditions is satisfied here. Although the BIA indicated that it "agree[d] with the Immigration Judge,” the IJ relied on two independent bases for its ruling: (1) each of the three DUI convictions “individually rises to the level of being a particularly serious crime” and (2) the three DUIs "are particularly serious crimes when looked at cumulatively.” The BIA's decision is unclear about which of the IJ’s alternative rationales it intended to adopt.