**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GABRIEL JARA-ARELLANO, | No. 12-73779 |
| Petitioner, | Agency No. A088-881-174 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 10, 2014
San Francisco, California

Before: WALLACE, McKEOWN, and GOULD, Circuit Judges.

Gabriel Jara-Arellano petitions for review of the Board of Immigration

Appeals's ("BIA") decision affirming an Immigration Judge's ("IJ") denial of his

applications for asylum, withholding of removal, and Convention Against Torture

("CAT") protection. We have jurisdiction pursuant to 8 U.S.C. § 1252.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

We have jurisdiction over Jara-Arellano's particularly serious crime claim because the BIA decided to address it, as the dissent acknowledges. *See Kin v. Holder*, 595 F.3d 1050, 1055 (9th Cir. 2010) ("[S]ince the BIA elected to ignore the procedural defect and consider the argument on its substantive merits, the reviewing court [may] not then decline to consider the issue."); Dissent at 11–12. In so doing, the BIA ensured that we would not be reviewing this claim for the first time on appeal. Thus, the argument is not waived.

In determining whether one of Jara-Arellano's convictions is a particularly serious crime barring him from asylum and withholding from removal, the BIA must provide a "clear explanation" of its decision. *See Delgado v. Holder*, 648 F.3d 1095, 1107–08 (9th Cir. 2011). Here, however, the BIA, like the IJ, offered only a statement of conclusion that Jara-Arellano was statutorily ineligible for asylum and withholding of removal because he had been convicted of at least one particularly serious crime. *See Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (stating that where "the BIA's phrasing seems in part to suggest that it did conduct an independent review of the record, but the BIA's analysis on the relevant issues is confined to a simple statement of a conclusion," we examine "the IJ's oral decision as a guide to what lay behind the BIA's conclusion." (internal quotation marks omitted)). Neither the IJ nor the BIA provided any reasoning, explanation,

2

or analysis for its conclusion. Yet "[w]ithout knowing the basis of the Board's decision, we cannot conduct a meaningful review." *Delgado*, 648 F.3d at 1108; *see also Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) ("We have long held that the BIA abuses its discretion when it fails to provide a reasoned explanation for its actions.").

Understandably, the BIA and the IJ may have provided these short conclusions because of the stipulation made before the IJ by the government and Jara-Arellano that Jara-Arellano had committed at least one particularly serious crime, although the BIA's decision makes no mention of the stipulation. However, the classification of Jara-Arellano's convictions is a question of law that we review de novo. *See Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004) ("Whether an offense is an aggravated felony under the INA is a legal question subject to de novo review."). It is well established that "[a] stipulation of law is not binding upon an appellate court." *Avila v. INS*, 731 F.2d 616, 620 (9th Cir. 1984) (citing *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289 (1917), and *L.A. Shipbuilding & Drydock Corp. v. United States*, 289 F.2d 222, 231 (9th Cir. 1961)). Because we have only the BIA's mere statement of conclusion, we are left without a basis for reviewing its decision. *Delgado*, 648 F.3d at 1108. We

3

therefore remand to the BIA so that it can provide a clear explanation for its particularly serious crime holding.

We grant the government's request for remand to the BIA so that the BIA can reconsider the government acquiescence element of Jara-Arellano's CAT claim. Upon remand, the BIA should consider all relevant evidence concerning the "efficacy of the [Mexican] government's efforts to stop the drug cartels' violence." *Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013).

We reject Jara-Arellano's claim that under the Fifth Amendment, the government may not place him in harm's way because his prior assistance to law enforcement created a "special relationship" between him and the government. As Jara-Arellano concedes, none of our cases have extended this principle to the asylum, withholding, and CAT context.

Each party shall pay its own costs on appeal.

**PETITION GRANTED in part; DENIED in part; REMANDED with instructions.**

*Jara-Arellano v. Holder*, No. 12-73779

WALLACE, Circuit Judge, concurring in part and dissenting in part:

The majority does three things. First, it holds that we must remand this case so that the Board "can provide a clear explanation for its particularly serious crime holding." Second, it grants the government's request for a remand so that the Board can "reconsider the government acquiescence element of Jara-Arellano's CAT claim" in light of our holding in *Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013). Finally, it rejects Jara-Arellano's Fifth Amendment claim.

I concur in the second and third. However, I disagree with the first. In holding that we must remand this case to the Board for a "clear explanation" of the particularly serious crime holding, the majority misapplies our precedent and ignores the facts of this case. A correct understanding of our precedent and those facts, as discussed below, shows that the Board did not err and that the majority's decision to remand as to this issue is misguided. Accordingly, I dissent in part.

I.

To understand the majority's error, it is necessary to review the procedural history of this case.

In 2008, while Jara-Arellano was living in California, he was convicted of two crimes. First, he was convicted of being a felon in possession of a firearm, in violation of Cal. Penal Code § 12021(a)(1). Second, he was convicted of

possession for sale of a controlled substance–namely, methamphetamine–in violation of Cal. Health & Safety Code § 11378.  Because of these convictions, Jara-Arellano was removed from the United States in 2010.  A year later, however, he returned to the United States and requested asylum, which led to these proceedings.

In hearings before the immigration judge (IJ), counsel for Jara-Arellano stipulated that Jara-Arellano was ineligible for asylum or withholding of removal, and thus was "only . . . eligible for relief under the Convention Against Torture," insofar as he had committed a particularly serious crime.  At a subsequent hearing, the IJ reiterated that Jara-Arellano was ineligible for asylum or withholding of removal because he had committed "a particularly serious crime."  Again, counsel for Jara-Arellano stipulated that this was correct.

In his oral decision, the IJ held that "[e]ither one of [Jara-Arellano's] crimes is a particularly serious crime."  Having made that holding, he went on to state that the parties had "agreed that [Jara-Arellano] has at least one particularly serious crime," referring to the stipulation entered into by counsel for Jara-Arellano.  Thus, in light of the stipulation regarding the "particularly serious crime" issue, the IJ in his decision stated that the "parties agreed that [Jara-Arellano] is not eligible for asylum [or] withholding of removal."

In his appeal to the Board of Immigration Appeals (Board), Jara-Arellano

did not raise the particularly serious crime issue. Instead, his brief before the Board identified eight different ways in which the IJ had allegedly violated his due process rights. *None* of those eight pertained to the IJ's conclusion that Jara-Arellano had been convicted of a particularly serious crime. Instead, they all pertained to aspects of Jara-Arellano's testimony regarding a shooting incident in Mexico; the timing of Jara-Arellano's entrance into the United States; and whether there was a likelihood that Jara-Arellano would be tortured if he were to be returned to Mexico. In its own brief before the Board, the government correctly observed that "the parties . . . stipulated that [Jara-Arellano] stands convicted of a particularly serious crime."

The Board dismissed Jara-Arellano's appeal from the IJ's decision. In particular, it stated the following with respect to this issue:

> First, we affirm the [IJ's] determination that [Jara-Arellano] is statutorily ineligible for asylum and withholding of removal . . . because he has been convicted of at least one particularly serious crime . . . . [Jara-Arellano] has not challenged this specific finding on appeal.

## II.

Before proceeding to discuss the majority's consideration of this claim, I summarize the procedural history detailed above. It is undisputed that Jara-Arellano was convicted of two crimes by the California courts. It is undisputed

that counsel for Jara-Arellano stipulated to the IJ that Jara-Arellano was ineligible for asylum or withholding of removal because he had committed a particularly serious crime. In light of that stipulation, the IJ held that Jara-Arellano had committed a particularly serious crime and was therefore ineligible for asylum or withholding of removal. Jara-Arellano did not appeal that holding to the Board, and did not raise any issue to the Board involving either the particularly serious crime determination itself or his stipulation.[1] Accordingly, the Board affirmed the IJ's determination that Jara-Arellano was ineligible for asylum and withholding of removal, insofar as he had been convicted of a particularly serious crime.

Given these facts, our holding as to this issue should have been straightforward. Jara-Arellano stipulated to the fact that he had committed a particularly serious crime. The IJ accordingly ruled that he had committed such a crime. Jara-Arellano did not appeal this ruling to the Board, which accordingly affirmed the IJ's determination. That should have been the end of the matter. We could have rejected Jara-Arellano's argument as to this issue either because he had

---

[1] At no point has Jara-Arellano attacked the stipulation itself. For instance, he has never contended that he received ineffective assistance of counsel with respect to the stipulation. As a general principle, such a stipulation is completely unobjectionable. *See, e.g.*, *Torres-Chavez v. Holder*, 567 F.3d 1096, 1102 (9th Cir. 2009) (explaining that it is "legitimate" for immigration attorneys to "concede" one form of relief so as to "focus[] the court's attention on a [different] basis for relief").

stipulated to it before the IJ, or because he failed to raise the issue before the Board.

Instead of taking either of these logical courses, the majority opts for a third, but erroneous, path. It relies on our decision in *Delgado v. Holder*, 648 F.3d 1095 (9th Cir. 2011), to conclude that the Board erred by failing to provide a "clear explanation" of its decision. (Mem. Dispo. at 2.) The majority asserts that "[n]either the IJ nor the [Board] provided any reasoning, explanation, or analysis for its conclusion." Thus, the majority concludes that we "cannot conduct a meaningful review" of the Board's decision, because we do not "know[] its basis."

The majority acknowledges, as it must, that Jara-Arellano stipulated to having committed a particularly serious crime. However, it disregards the stipulation on the basis of its assertion that the stipulation is "not binding" upon us. (*Id.* at 3.) Instead, it asserts that the "classification of Jara-Arellano's convictions is a question of law that we review de novo."

Every step of this reasoning is erroneous. First, the majority's reliance on *Delgado* is incorrect. Because we do, in fact, know the basis of the Board's conclusion, we are perfectly capable of conducting the "meaningful review" required by *Delgado*. Second, the majority's reliance on the fact that the stipulation is "not binding" upon us is misguided. The question is not whether we

5

are bound by the stipulation, but whether the Board erred in relying on it. Finally, regardless of whether the Board provided an adequate explanation of its reasoning, and regardless of whether the stipulation is binding upon us, the fact remains that Jara-Arellano did not raise this issue before the Board. Accordingly, the argument is waived and he should not be permitted to raise it now. I discuss my reasons for each of these conclusions below

## III.

The majority's foundational doctrinal error is its misreading of *Delgado*. Accordingly, I begin my analysis with a discussion of that case.

In *Delgado*, we considered the Board's determination that a petitioner had been convicted of a particularly serious crime, which would have barred him from eligibility for asylum and withholding of removal. 648 F.3d at 1107. We explained that the Board's "decisionmaking is governed by minimum procedural requirements," and that "[d]ue process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument." *Id.* (citation omitted).

In light of these principles, we held that the Board had failed to provide a sufficiently "clear explanation" of its determination that the petitioner had committed a particularly serious crime. *Id.* at 1107–08. In particular, we

6

explained that the IJ had "relied on two independent bases for its ruling" that the petitioner had been convicted of a particularly serious crime. *Id.* at 1108 n.18. The Board's decision, however, was "unclear about which of the IJ's alternative rationales it intended to adopt." *Id.* Thus, we concluded that we could not "ascertain which of the IJ's rationales the [Board] intended to adopt, if any." *Id.* Because of this "ambiguity," we stated that we were unable to "understand[] the [Board's] reasoning," which in turn meant that we were unable to "discern[] the extent to which the [Board] agreed with and [was] supported by the IJ's analysis, assuming the [Board] intended to adopt the IJ's reasoning." *Id.* at 1108. Thus, we remanded to the Board so it could resolve this "ambiguity" and provide us a "clear explanation" of which, "if any," of the IJ's alternative rationales it intended to adopt. *Id.*

In this case, by contrast, no such "ambiguity" exists. As is pointed out above, the Board expressly stated that it "affirm[ed] the [IJ's] determination that [Jara-Arellano] is statutorily ineligible for asylum and withholding of removal . . . because he has been convicted of at least one particularly serious crime." Thus, unlike in *Delgado*, we know that the Board unambiguously "intended to adopt the IJ's reasoning." *Delgado*, 648 F.3d at 1108. Moreover, we know that the IJ expressly held that "[e]ither one of [Jara-Arellano's] crimes is a particularly

7

serious crime." Thus, there is no ambiguity in this case. The IJ held that *either* of Jara-Arellano's two crimes was "particularly serious," and the Board affirmed that decision. No further clarification from the Board is required.

IV.

The majority's misreading of *Delgado* only gets it part of the way to the holding that it reaches. To reach its conclusion–i.e., that we must remand to the Board–the majority must do something with the fact that Jara-Arellano stipulated to this issue before the IJ.

The majority begins its consideration of the stipulation by stating that the "classification of Jara-Arellano's convictions is a question of law that we review de novo." (Mem. Dispo. at 3.) For this proposition, the majority cites *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004), which does indeed state that the Board's "determination of purely legal questions is reviewed de novo" and that "[w]hether an offense is an aggravated felony under the [Immigration and Nationality Act] is a legal question subject to de novo review." *Id.* (citations omitted). However, in *Cazarez-Gutierrez* there was no stipulation. Instead, the Board had held that a conviction for possession of methamphetamine is an "aggravated felony" under the relevant statute. *Id.* at 908.

Thus, *Cazarez-Gutierrez* itself only stands for the proposition that whether

8

an offense is an "aggravated felony" is a question of law, and thus subject to de novo review. *Cazarez-Gutierrez* says nothing about what to make of the Board's review of a stipulation entered into before the IJ regarding such a felony. Therefore, the crux of the issue is the majority's next sentence, which states that it "is well established that '[a] stipulation of law is not binding upon an appellate court.'" (Mem. Dispo. at 3, *citing Avila v. INS*, 731 F.2d 616, 620 (9th Cir. 1984).)

It is true that *Avila* holds that a "stipulation of law is not binding upon an appellate court." *Avila*, 731 F.2d at 620. As we explained in *Avila*, this is because of this court's "longstanding policy" that there is "no reason why [this court] should make what we think would be an erroneous decision, because the applicable law was not insisted upon by one of the parties." *Id.* at 620–21 (citation omitted).

*Avila* is distinguishable. As pointed out above, *Avila* stands for the proposition that any "stipulation of law" made by the parties is not "binding" upon this court. *Id.* at 620. This means exactly what it says: i.e., that this court is not *bound* by whatever stipulation the parties made as to the particularly serious crime issue before the IJ. Thus, if we were of the view that neither of Jara-Arellano's felonies were in fact "particularly serious crimes," it would be possible for us to disregard the stipulation and hold as much. To put it another way, *Avila* holds that this court has the discretion to disregard stipulations as to a matter of law. *See,*

9

*e.g.*, *Hill v. Koon*, 977 F.2d 589, *2 n.1 (9th Cir. 1992) (unpub.) (recognizing that the parties had stipulated to a certain legal issue before the district court, but following *Avila* and stating that the court "cho[]se not to apply the parties' stipulation in this case" in light of Ninth Circuit precedent as to that legal issue).

It is important to recognize, however, that *Avila* does not hold anything more than this. The question before our panel is not whether we are *bound* by the parties' stipulation that either of Jara-Arellano's crimes was a "particularly serious crime." Again, *if* we were to conclude that neither of those crimes were "particularly serious," we would be at liberty to hold as much, notwithstanding the parties' stipulation before the IJ. But that is not the question before us. Instead, the question is whether the Board erred, under *Delgado*, by failing to provide a sufficiently "clear explanation" of its decision. Seeing that these are two entirely different questions places the parties' stipulation in the proper context. Because of the stipulation, there was simply no reason in this case for the Board to provide a more elaborate "explanation" of its decision regarding this issue. The parties were in agreement as to this issue, which meant that there was nothing further for the Board to discuss as to this issue.

The majority's holding to the contrary creates a perverse incentive. By choosing to disregard the parties' stipulation, the majority is able to arrive at its

10

conclusion that the Board erred by failing to provide a sufficiently reasoned explanation of its decision. But I fail to see how the Board can be faulted for failing to provide a reasoned explanation of a conclusion to which *both sides* had already stipulated. Indeed, the logic of Jara-Arellano's argument here, if followed to its conclusion, would encourage petitioners to "play possum" before the Board by stipulating to certain issues. Having lulled the Board into accepting those stipulations and not fully analyzing the issue, the petitioner could then argue before this court that the Board had failed to "satisfy its obligation" to provide a reasoned explanation for its action–notwithstanding the petitioner's own stipulation to the issue before the Board–and thereby secure a remand.

V.

Although the majority errs in its reliance on the cases discussed above, the more fundamental error made by the majority lies in reaching this issue in the first place. We need never have considered whether the Board erred under *Delgado* by failing to provide a sufficiently clear explanation of its reasoning, or whether the stipulation is binding upon us, for the simple reason that Jara-Arellano never raised this issue before the Board. As such, it was waived.

In considering this issue, it is important to make a threshold distinction. I am not arguing that we lack jurisdiction over this issue. Because the Board chose

11

to address the issue, we have jurisdiction to consider it. *See Kin v. Holder*, 595 F.3d 1050, 1055 (9th Cir. 2010) (explaining that where the Board "elected to ignore [a] procedural defect and consider [an] argument on its substantive merits," the "policy concerns underlying the requirement of allowing an agency full opportunity to resolve a controversy or correct its errors before judicial intervention have been fulfilled," which in turn means that this court "can properly exercise jurisdiction").

However, the fact that we have jurisdiction over the issue does not mean that Jara-Arellano should be permitted to raise this argument regarding it. In my view, because Jara-Arellano failed to raise this issue in his brief before the Board, he has waived it and may not raise it on appeal. This is a well-established principle of appellate practice. *See, e.g.*, *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990) (explaining that "[o]ur general rule is that we will not consider issues raised for the first time on appeal") (citations omitted). Because Jara-Arellano stipulated to this issue before the IJ, and because he did not raise the issue before the Board, we should not consider it now "for the first time on appeal." *Id.*

VI.

In sum, I dissent from the majority's holding that we must remand this case to the Board for a "clear explanation" of the particularly serious crime holding.

12